**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., | Master File No.: 15-cv-03339 |
| Plaintiff, | |
| -against- | |
| PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, et al., | |
| Defendants. | |

**PIMCO'S MEMORANDUM OF LAW IN OPPOSITION**
<u>**TO AIG'S MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................................... 4

      A.    AIG's Conduct Lay At The Heart Of The Financial Crisis .................................. 4

      B.    The Securities Class Action .............................................................................. 5

      C.    PIMCO's California Action ............................................................................... 7

III.  ARGUMENT ............................................................................................................ 9

      A.    AIG's Motion Should Be Denied As Moot Because This Case Is
            An Abuse Of The Declaratory Judgment Act ..................................................... 9

      B.    PIMCO's Claims Are Timely ........................................................................... 11

      C.    *IndyMac* Does Not Control The Resolution Of This Action .............................. 17

      D.    A Determination That PIMCO's Claims Are Untimely Would
            Undermine The Purpose Of Class Actions ....................................................... 20

IV.   CONCLUSION ........................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Albano v. Shea Homes Ltd. P'ship*,
    634 F.3d 524 (9th Cir. 2011) ........................................................................... 20

*Allstate Ins. Co. v. CitiMortgage, Inc.*,
    2012 WL 967582 (S.D.N.Y. Mar. 13, 2012) ................................................... 11

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
    741 F. Supp. 2d 511 (S.D.N.Y. 2010) ............................................................... 6

*Am. Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974) .............................................................................. passim

*Appleton Elec. Co. v. Graves Truck Line, Inc.*,
    635 F.2d 603 (7th Cir.1980), .......................................................................... 15

*Arivella v. Lucent Technologies, Inc.*,
    623 F. Supp. 2d 164 (D. Mass. 2009) ............................................................. 20

*Ballard v. Tyco Int'l, Ltd.*,
    2005 WL 1683598 (D.N.H. July 11, 2005) ..................................................... 20

*In re BP p.l.c. Sec. Litig.*,
    2014 WL 4923749 (S.D. Tex. Sept. 30, 2014) ................................. 14, 15, 18, 20

*British Coal Staff Superannuation Scheme v. AIG, Inc.*,
    No. 12-cv-4555-LTS-DCF (S.D.N.Y.) ..................................................... 16, 22

*Caldwell v. Berlind*,
    543 F. App'x 37 (2d Cir. 2013) ....................................................................... 19

*Carroll v. AIG Int'l Grp., Inc. et al.*,
    No. 1:08-cv-8659 (S.D.N.Y.) .......................................................................... 11

*Chardon v. Soto*,
    462 U.S. 650 (1983) ........................................................................................ 13

*Crown, Cork & Seal Co., Inc., v. Parker*,
    462 U.S. 345 (1983) .............................................................................. passim

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (2014) .................................................................................... 19

*Devlin v. Scardelletti*,
    536 U.S. 1 (2002) ............................................................................................ 15

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
  2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) .........................................................................19

*Edwards v. Boeing Vertol Co.*,
  717 F.2d 761 (3rd Cir. 1983), ...................................................................................15, 16

*Elmore v. Henderson*,
  227 F.3d 1009 (7th Cir. 2000) (Posner, J.) ...........................................................12, 21

*In re Enron Corp. Sec.*,
  465 F. Supp. 2d 687 (S.D. Tex. 2006) ....................................................................20

*FDIC v. Bear Stearns Asset Backed Sec. I LLC*,
  2015 WL 1311300 (S.D.N.Y. Mar. 24, 2015) .........................................................19

*Fire and Police Pension Ass'n of Colo. and M. Clay Ragsdale, IV v. AIG Int'l
  Grp., Inc. et al.*,
  No. 1:08-cv-10586 (S.D.N.Y.) ...............................................................................11

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...................................................................................12

*Gen. Electric Pension Trust, et al. v. Am. Int'l Grp., Inc.*,
  No. 1:15-cv-00957-LTS-DCF, (S.D.N.Y.) ...........................................................3, 16

*GIC Private Ltd. v. AIG, Inc., et al.*,
  No. 13-cv-6565-LTS-DCF (S.D.N.Y.) .................................................................16, 22

*Gilmore Bank v. AsiaTrust New Zealand Ltd.*,
  223 Cal. App. 4th 1558 (2014) .............................................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) ............................................................................................6

*Hildes v. Andersen*,
  2010 WL 4811975 (S.D. Cal. Nov. 8, 2010) .........................................................19

*Hoelzer v. City of Stamford, Conn.*,
  722 F. Supp. 1106 (S.D.N.Y. 1989), .....................................................................19

*Hrdina v. World Sav. Bank, FSB*,
  2012 WL 294447 (N.D. Cal. Jan. 31, 2012) ..........................................................19

*Joseph v. Wiles*,
  223 F.3d 1155 (10th Cir. 2000) .............................................................................12

*Kuwait Inv. Office v. AIG, Inc., et al.*,
  No. 11-cv-8403-LTS-DCF (S.D.N.Y.) .................................................................16, 22

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilberston*,
  501 U.S. 350 (1991)..................................................................................14, 19

*Lord Abbett Affiliated Fund, Inc., et al. v. AIG, Inc., et al.*
  No. 15-cv-774-LTS-DCF (S.D.N.Y.) ......................................................16

*Luther v. Countrywide Fin. Corp.*,
  2009 WL 3271368 (C.D. Cal. Oct. 9, 2009) ......................................2, 10

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  722 F. Supp. 2d 1157 (C.D. Cal. 2010) ...............................................14, 19

*In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.*,
  2012 WL 6840532 (D.N.J. Dec. 20, 2012).................................................14

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
  23 F. Supp. 3d 203 (S.D.N.Y. 2014)...........................................................19

*Nat'l Cancer Hosp. of Am. v. Webster*,
  251 F.2d 466 (2d Cir. 1958)...........................................................................2

*New York v. U.S. Dep't of Health & Human Servs.*,
  2008 WL 5211000 (S.D.N.Y. Dec. 15, 2008) ..............................................9

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
  673 F.3d 84 (2d Cir. 2012)......................................................................10, 11

*Oppenheimer Equity Fund, Inc., et al. v. AIG, Inc., et al.*,
  No. 12-cv-523-LTS-DCF (S.D.N.Y.) .....................................................16, 22

*Pac. Inv. Mgmt. Co. LLC v. Am. Int'l Grp., Inc.*,
  2015 WL 3631833 (C.D. Cal. June 10, 2015) ...................................2, 8, 11

*Pacific Life Funds, et al. v. AIG, Inc., et al.*,
  No. 12-cv-6071-LTS-DCF (S.D.N.Y.) ....................................................16, 22

*Palmer v. Stassinos*,
  236 F.R.D. 460 (N.D. Cal. 2006)..................................................................17

*People v. Bradley*,
  1 Cal. 3d 80 (1969) ........................................................................................19

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)...........................................................................7, 12, 21

*Police and Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc.*,
  721 F.3d 95 (2d Cir. 2013),................................................................ passim

*Prudential Ins. Co. of Am. v. Bank of Am. Nat'l Ass'n*,
　14 F. Supp. 3d 591, 618 (D.NJ 2014) .................................................20

*The Regents of the Univ. of Cal. v. AIG, Inc.*,
　No. 14-cv-1270-LTS-DCF (S.D.N.Y.) ...........................................16, 22

*Rhulen Agency, Inc. v. Ala. Ins. Guar. Assoc.*,
　896 F.2d 674 (2d Cir. 1990) .............................................................9

*Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*,
　559 U.S. 393 (2010) ......................................................................18

*Sibbach v. Wilson & Co.*,
　312 U.S. 1 (1941) .........................................................................18

*Smith v. Bayer Corp.*,
　131 S. Ct. 2368 (2011) ..........................................................3, 14, 16

*State Farm Mut. Ins. Co. v. Boellstorff*,
　540 F.3d 1223 (10th Cir. 2008) ...............................................14, 15, 20

*Steel Co. v. Citizens for a Better Env't*,
　523 U.S. 83 (1998) .........................................................................9

*Teachers Ret. Sys.of the State of Ill. v. AIG, Inc.*,
　No. 13-cv-3377-LTS-DCF (S.D.N.Y.) ...........................................16, 22

*Tosti v. City of Los Angeles*,
　754 F.2d 1485 (9th Cir.1985) ...........................................................14

*U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*,
　985 F.2d 1148 (2d Cir. 1993).........................................................9, 20

*Wal-Mart Stores, Inc. v. Dukes*,
　131 S. Ct. 2541 (2011) ...................................................................22

*Walters v. Edgar*,
　163 F.3d 430 (7th Cir. 1998) ...........................................................17

*WorldCom Sec. Litig.*,
　496 F.3d 245 (2d Cir. 2007).......................................................... passim

*Youell v. Exxon Corp.*,
　74 F.3d 373 (2d Cir. 1996)..............................................................10

**STATUTES**

15 U.S.C.
    § 77k ...................................................................................................6, 7, 17
    § 77m ......................................................................................................8, 15
    § 77v ........................................................................................................1, 8

15 U.S.C.
    § 78j(b) ........................................................................................................6
    § 7878t(a) ....................................................................................................6

28 U.S.C. §1333 ................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .................................................................................... passim

Local Rule 56.1 ......................................................................................................1

Rule 12 ..................................................................................................................9

## I.      INTRODUCTION

This dispute, pending in California state court, arises from AIG's failure to properly disclose to PIMCO and its other investors more than $180 billion in subprime mortgage exposure.[1] The United States Government ultimately provided more than $182 billion in assistance to save AIG from bankruptcy.  Meanwhile, PIMCO and other AIG investors received no such bailout and incurred substantial damages as a result of AIG's "reckless" and "unconscionable" bets.  *See* PIMCO Complaint, ¶25 (quoting President Obama and former Federal Reserve Chairman Bernanke).  Investor lawsuits ensued, including a securities Class Action filed in May 2008.  In late 2014, AIG entered into a settlement of the Class Action and stipulated to a certified settlement Class, of which PIMCO was a member.  After evaluating the terms of the Settlement, PIMCO timely exercised its constitutional right to opt out of the Class.  PIMCO then properly re-filed its individual claims in California state court, ten miles from its headquarters in Orange County, California.

Congress expressly provided concurrent jurisdiction to the state courts, and expressly prohibited removal of state court actions asserting only Securities Act claims.  15 U.S.C. § 77v. Attempting to avoid PIMCO's chosen forum, AIG removed the action to the Central District of California and sought transfer to the Southern District of New York.  Following full briefing on

---

[1] Unless otherwise noted, defined terms have the meanings given to them in PIMCO's Memorandum Of Law In Support Of Its Motion To Dismiss, ECF No. 34.  Citations to the "DeLange Decl." refer to the Declaration Of Timothy A. DeLange in support of this Opposition. Citations to "AIG Mem." refer to AIG's Memorandum Of Law In Support Of Its Motion For Summary Judgment [ECF No. 30].  Citations to "¶" are to AIG's Complaint For Declaratory Relief (the "Complaint"); citations to "PIMCO ¶" are to PIMCO's Complaint For Violations Of The Securities Act of 1933 in the California Action; and citations to "R.56.1 ¶" are to the parties' respective Local Rule 56.1 statement of material facts (and response thereto), as indicated.  Unless otherwise noted, all internal quotations and citations are omitted, and all emphasis is added.

PIMCO's motion to remand and AIG's motion to transfer, the Honorable David O. Carter remanded PIMCO's action, finding that the state court of California is the proper forum for adjudicating PIMCO's lawsuit. *Pac. Inv. Mgmt. Co. LLC v. Am. Int'l Grp., Inc.*, 2015 WL 3631833, at *1 (C.D. Cal. June 10, 2015).

Having lost in federal court in California, AIG now requests this Court take the unprecedented step of substituting itself as the arbiter of the parties' dispute in California by ruling on the timeliness of PIMCO's claims. The California state court will determine the timeliness of PIMCO's claims in the California Action. A declaratory judgment in this Court on the same issue would be superfluous, and would interfere with the jurisdiction of the California state court. There is no authority supporting AIG's request. In fact, the declaratory relief sought serves no "useful purpose" and should be dismissed. *See, e.g.*, *See Nat'l Cancer Hosp. of Am. v. Webster*, 251 F.2d 466, 468 (2d Cir. 1958) (Hand, J.), *cert. denied*, 361 U.S. 824 (1959) ("A defendant's right of access to a federal court in an action against him can be asserted only by removal" and a declaratory judgment action "is not the equivalent of a removal."); *Luther v. Countrywide Fin. Corp.*, 2009 WL 3271368, at *3 (C.D. Cal. Oct. 9, 2009) ("It serves no useful purpose—in fact, it would undermine principles of federalism and comity—to circumvent the state system by this collateral declaratory judgment action [concerning plaintiffs' Securities Act claims].").

Moreover, even if the Court were to determine it should rule on the timeliness of PIMCO's claims, substantively, PIMCO's Securities Act claims are timely. Contrary to AIG's assertion, the Second Circuit's *IndyMac* decision does not govern.[2] In *IndyMac*, the appellants did not opt out

---

[2] *See Police and Fire Ret. Sys. of the City of Detroit v. IndyMac MBS, Inc.,* 721 F.3d 95 (2d Cir. 2013), *cert. granted*, 134 S. Ct. 1515 (2014), *and cert. dismissed as improvidently granted*, 135 S. Ct. 42 (2014). The Supreme Court granted *certiorari* in *IndyMac* to resolve a split between the Second Circuit and Tenth Circuit regarding whether the Securities Act's three-year "statute of

of a certified class. In addition, the appellants' claims were not properly asserted in the class action because the representative plaintiffs did not have standing to pursue them. Under that fact pattern, the Second Circuit held that the statute of repose was not tolled for appellants' claims. Critically, *IndyMac* does not address the issue here – namely, the timeliness of opt out claims from a *certified class action* brought by representative plaintiffs with standing.

PIMCO's claims were timely brought in the Class Action by plaintiffs with standing to pursue the claims. Moreover, unlike appellants in *IndyMac*, PIMCO was a party to a class action certified under Rule 23(c) that was brought by a named plaintiff within both the limitations and repose periods. As a member of a certified class, PIMCO was a party to the Class Action from the beginning. *See Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011); *Crown, Cork & Seal Co., Inc., v. Parker*, 462 U.S. 345, 354 (1983). Indeed, AIG has argued in other proceedings that upon certification of the Class, the class members become actual parties to the Class Action. *See, e.g., See Gen. Electric Pension Trust, et al. v. Am. Int'l Grp., Inc.*, No. 1:15-cv-00957-LTS-DCF, ECF No. 28, at 2, 4 (S.D.N.Y. May 28, 2015); *see also* DeLange Decl., Ex. F (collecting statements from numerous other opt out cases where AIG emphasized the individual plaintiffs would have become "parties within the meaning of Fed. R. Civ. P. 23" had they remained in the Class Action). Thus, PIMCO's re-filing of its claims in the California Action after exercising its Constitutional right to opt out of the certified Class is a continuation of the original lawsuit. PIMCO's claims are timely without application of any tolling doctrine.

---

repose" is within the *American Pipe* rule, or rather is an absolute time bar that cannot be satisfied for class members' individual claims by the commencement of a class action case. After the appeal was fully briefed and on the eve of oral argument, the Supreme Court dismissed the writ of *certiorari* as "improvidently granted" following a settlement of the underlying class action.

Moreover, extending *IndyMac* to dismiss PIMCO's claims on timeliness grounds would undermine the purpose of class actions. Such a ruling would eviscerate class members' ability to rely on a certified class action to protect their interests, and encourage them to opt out—both before and after decision on certification—to guard against the expiration of the statute of repose. The end result would be "[a] needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 . . . [was] designed to avoid." *Crown, Cork & Seal*, 462 U.S. at 351.

## II. STATEMENT OF FACTS

### A. AIG's Conduct Lay At The Heart Of The Financial Crisis

AIG is a multinational insurance and financial services company. PIMCO Complaint, ¶9. Founded in 1919, AIG cultivated a reputation for conservative and prudent stewardship and investment, managing risk and building shareholder and bondholder value. *Id.*, ¶2. Beginning in 2004, however, AIG turned to complex securities in an attempt to capitalize on the housing bubble and booming mortgage securitization industry. *Id.*, ¶4. By the end of 2005, AIG had amassed a credit default swap ("CDS") portfolio totaling nearly $80 billion – or 75% of AIG's equity base. *Id.*, ¶5. By mid-2007, AIG had accumulated an outsized portfolio of residential-mortgage backed securities ("RMBS") that surpassed $94 billion, and consisted mostly of risky subprime mortgage bonds purchased through the Company's securities lending program. *Id.*, ¶15.

At the same time it was chasing profits through "all kinds of unconscionable bets" on complex mortgage securities (*Id.*, ¶¶25, 193) (quoting Federal Reserve Chairman Bernanke), AIG raised more than $27 billion from investors in public securities offerings (the "Offerings") conducted between October 18, 2006 and May 12, 2008 (the "Offering Period"). *Id.*, ¶¶1, 206. AIG did not properly disclose to investors its massive exposure to the housing and subprime mortgage markets and the associated risks to the Company, including the interrelated credit risk, collateral risk, and valuation risk of its swap portfolio. *Id.*, ¶¶6, 77-87. AIG claimed its exposure

was "remote, even in severe recessionary market scenarios." In truth, the Company was underwriting systemic risks that were the opposite of what insurance companies are supposed to do. *Id.*, ¶113. AIG's "terrible" bets and "outrageous" behavior threatened to bring down the entire financial system and carried AIG, once the world's largest insurance company, to the brink of insolvency. *Id.*, ¶193 (quoting Bernanke and Lawrence Summer, Former Chairman of the White House National Economic Council).

When the housing market plummeted in 2008, AIG's mounting subprime mortgage exposure, including relentless collateral calls by its swap counterparties, placed the Company in a liquidity vise. *Id.*, ¶19. Before the market opened on September 17, 2008, AIG announced that the United States Government had agreed to loan it $85 billion to save the Company from bankruptcy. *Id.*, ¶22. The Government's $85 billion emergency bailout of AIG was not enough to save AIG from its "recklessness and greed." *Id.*, ¶¶25, 192 (quoting President Obama). In the ensuing months, the U.S. Government extended nearly $100 billion in additional aid to AIG. *Id.*, ¶182. While AIG was bailed out, the Company's investors suffered upwards of $200 billion in losses on AIG securities. *Id.*, ¶64.

### B.    The Securities Class Action

Beginning in May 2008, a series of class actions were filed on behalf of investors in various AIG securities. Plaintiffs principally alleged that AIG, and various current or former AIG executives, directors, accountants, and underwriters, materially misstated and failed to properly disclose AIG's massive accumulated exposure to the subprime mortgage market through its portfolios of CDS and RMBS.

The class actions were consolidated and, on May 19, 2009, the Lead Plaintiff filed a 289-page Consolidated Class Action Complaint bringing claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933

on behalf of a putative class of investors who purchased or otherwise acquired over seventy different types of publicly traded securities issued by AIG between March 16, 2006, and September 16, 2008 (the "Class Period"). ECF No. 95. The prospective class included investors in the Offerings, including CUSIPs 026874115, 02687QBC1, 02687QDGO, 02687QBD9, 026874BG1, and 026874BE6, the same securities at issue in the California Action. *Id.*, ¶¶591-92.

AIG moved to dismiss the Complaint. The court denied AIG's motion in its entirety on September 27, 2010. *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 517 (S.D.N.Y. 2010). After several years of discovery, the parties briefed and argued a motion for class certification, which the court held in abeyance pending the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014).

On August 4, 2014, AIG disclosed that it had reached a proposed class action settlement of only $960 million (the "Class Settlement"). *See* AIG R. 56.1 ¶6. On September 12, 2014, the parties filed the Stipulation and Agreement of Settlement, and Lead Plaintiff moved for preliminary approval of the Class Settlement and certification of a settlement class (the "Class"). Defendants did not oppose certification of the Class. AIG R. 56.1 ¶¶7, 8. The Class was defined as "all Persons (a) who purchased AIG Securities on a U.S. public exchange from March 16, 2006 through September 16, 2008 (the "Settlement Class Period") or (b) who purchased or acquired AIG Securities in or traceable to a public offering during the Settlement Class Period, and suffered damages as a result." ECF No. 445.

On October 7, 2014, the court granted preliminarily approval of the Class Settlement, certified the Class,[3] and directed that notice thereof be provided to Class members. AIG R. 56.1

---

[3] AIG's contention that PIMCO "overlooks that, at the time it requested exclusion, the class had been certified only on a provisional basis for settlement purposes only in connection with Judge

¶9. Notice of the terms of the settlement and the court's certification of the Class ("Class Notice") was disseminated to Class members, including PIMCO, on or about November 6, 2014. The Class Notice indicated that PIMCO's estimated recovery in the Class Settlement was just $1.00 per $100 in the aggregate for all AIG securities purchased during the Class Period. *See* DeLange Decl., Exs. A, p. 3. The Preliminary Approval Order certifying the Class, as well as the subsequent Class Notice, provided a deadline of January 5, 2015, for Class members to opt out of the Class Action. *See* DeLange Decl., Exs. Am B. On March 20, 2015, the court granted final approval of the Class Settlement. AIG R. 56.1 ¶9.

PIMCO was a member of the certified Class. PIMCO R. 56.1 ¶1. On December 24, 2014, PIMCO exercised its Constitutional rights and timely opted out of the Class Action. PIMCO R. 56.1 ¶4.

### C.    PIMCO's California Action

On March 27, 2015, PIMCO, for and on behalf of the PIMCO Funds, filed an individual action against AIG in California state court. AIG R.56.1 ¶20. All of the investment funds named as plaintiffs in the California Action are managed and/or advised by PIMCO LLC in Orange County, California. PIMCO R.56.1 ¶9. The California Action asserts a single claim under Section 11 of the Securities Act based on material misstatements and omissions AIG made in registration statements for the Offerings. AIG R.56.1 ¶21.

---

Swain's preliminary approval of the settlement" (AIG Mem. at 11) ignores that Class members were *only* afforded a right to opt out of the provisionally certified Class, and that Judge Swain's March 20, 2015, Order granting final approval of the Class Settlement merely "affirmed" the court's prior determination. AIG's argument, if true, would mean the Class Settlement here – and virtually all securities class action settlements – violate the Due Process Clause of the Fifth Amendment because Class members are almost *never* afforded the right to opt out *after* final settlement approval. *See Shutts*, 472 U.S. at 813-14.

PIMCO's claims against AIG in the California Action were first brought in the Consolidated Class Action Complaint filed on May 18, 2009 in the Class Action, and in earlier class action complaints consolidated in the Class Action. PIMCO R.56.1 ¶2. Upon certification of the Settlement Class on October 7, 2014, PIMCO became a party to the Class Action. PIMCO R.56.1 ¶3. PIMCO's claims in the California Action are a continuation of the claims asserted on its behalf in the Class Action. PIMCO R.56.1 ¶5.

On April 30, 2015, AIG removed the California Action to the Central District of California, and then moved to transfer the action to the Southern District of New York. AIG R.56.1 ¶23. PIMCO moved to remand the action. AIG R.56.1 ¶24. On June 10, 2015, the Central District of California remanded the action, concluding that AIG's removal violated the plain language of Section 22(a) of the Securities Act, 15 U.S.C. § 77v, and the Supreme Court's interpretation of the statute. *Pac. Inv. Mgmt.*, 2015 WL 3631833, at *7 ("[F]or reasons which have been discussed in other well-reasoned opinions, [AIG's argument] does not overcome the text of the statute and the Supreme Court's reading of the text . . . ."). The Central District of California noted its holding was "in accord with the conclusion of a majority of district courts" nationwide. *Id.* at *8.[4]

In the California Action, AIG has asserted that PIMCO's claims are "time barred under Section 13 [15 U.S.C. § 77m] of the Securities Act," and has specifically advocated for "formal

---

[4] Throughout its papers, AIG mischaracterizes the Remand Order. Judge Carter did not "base" his ruling on "recent California district court decisions" holding that SLUSA does not permit removal of class actions asserting only Securities Act claims. *See* AIG Mem. at 8. To the contrary, Judge Carter grounded his order on the plain language of Section 22(a) of the Securities Act, the Supreme Court's reading of the statutory text, and the well-reasoned decisions of a majority of district courts in the Central District of California and nationwide. *Pac. Inv. Mgmt.*, 2015 WL 3631833, at *6-8. In addition, Judge Carter made no findings with respect to AIG's motion to transfer because after granting PIMCO's remand motion, he determined that AIG's transfer motion was moot. AIG's speculation and conjecture as to how Judge Carter would have ruled on AIG's transfer motion is irrelevant.

briefing" of the issue. PIMCO R.56.1 ¶6; s*ee also* DeLange Decl., Ex. G (Joint Initial Case Management Conference Report ("Joint Report"), at 5, 8-12. Judge Robert J. Moss, the presiding judge in the California Action, has indicated that the timeliness issue will be the *first substantive issue* addressed in the California Action. Specifically, at the initial Case Management Conference on July 1, 2015, Judge Moss stated that the court would (1) first receive briefing on AIG's intended motion to stay on the purported ground of *forum non conveniens*, and if the motion is denied, the court would (2) summarily adjudicate or hold a trial on the timeliness issue. PIMCO R.56.1 ¶¶7, 8.

## III. ARGUMENT

### A. AIG's Motion Should Be Denied As Moot Because This Case Is An Abuse Of The Declaratory Judgment Act

This Court need not resolve the complex issues of law raised in AIG's Motion. As Judge Carter noted in the June 10, 2015 Remand Order, the court's subject matter jurisdiction is a threshold issue that should be determined first, "[p]rior to ruling on any substantive motion." *Pac. Inv. Mgmt.*, 2015 WL 3631833, at *3. Judge Carter's ruling is consistent with Supreme Court and Second Circuit law, which requires resolution of PIMCO's Motion to Dismiss on jurisdictional grounds before addressing AIG's summary judgment motion. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Assoc.*, 896 F.2d 674, 678 (2d Cir. 1990) (holding that a Rule 12(b)(1) motion should be considered first since it could render all other motions moot); *U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1155 (2d Cir. 1993) (district court erred by ruling on the timeliness of the action prior to addressing defendant's Rule 12(b)(1) motion challenging subject matter jurisdiction). Indeed, this Court has held that "courts must first resolve jurisdictional questions before ruling on the merits of an issue; to act otherwise 'risks offend[ing] fundamental principles of separation of powers.'" *New York v. U.S. Dep't of Health & Human*

*Servs.*, 2008 WL 5211000, at *10 (S.D.N.Y. Dec. 15, 2008) (Crotty, J.)) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

As set forth in PIMCO's Motion to Dismiss,[5] this declaratory judgment action is a forum-shopping effort designed to circumvent the California state court's jurisdiction. AIG's attempt to litigate here an affirmative defense that it is fully capable of litigating in the California Action is unprecedented. Indeed, AIG admits that its Complaint and motion for summary judgment advance an improper "race to *res judicata*" as AIG believes the relevant law is more favorable here than in California.[6]

None of AIG's authorities supports the legitimacy of this declaratory judgment action. *See* AIG Mem. at 15-16 (citing *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996) and *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84 (2d Cir. 2012)). *Exxon* concerned a "novel question" of federal maritime law, 28 U.S.C. §1333, for which federal courts have exclusive jurisdiction. *See* 74 F.3d at 376. Here, the issue does not involve a "novel question" of federal law. Moreover, unlike the admiralty and maritime law issues in *Exxon*, adjudication of Securities Act claims are not "quintessentially" the "obligation" of federal courts. *See id.* For over eighty years, the state judiciaries have been entrusted by Congress, "in the same way as the federal courts," to decide claims under the Securities Act. *See Countrywide*, 2009 WL 3271368, at *3 (refusing to hear declaratory judgment suit involving Securities Act claims

---

[5] The arguments and authority in PIMCO's Motion to Dismiss are incorporated by reference herein.

[6] AIG's observation that PIMCO is a "sophisticated investor" that has filed suits against certain trustees of RMBS in the Southern District of New York is irrelevant and immaterial to the resolution of this Motion. *See* AIG Mem. at 2, n.1. For its part, AIG is experienced litigating in California courts, having filed an action less than six months ago in the Superior Court of California, County of Orange. PIMCO R.56.1 ¶11.

"because it would undermine principles of federalism and comity" due to state court's concurrent jurisdiction over Securities Act claims); *Pac. Inv. Mgmt.*, 2015 WL 3631833, at \*5 ("Since its passage, state and federal courts have had concurrent jurisdiction over claims brought pursuant to the Securities Act"); *Allstate Ins. Co. v. CitiMortgage, Inc.*, 2012 WL 967582, at \*7 (S.D.N.Y. Mar. 13, 2012) ("These claims under the 1933 Act may not be removed to federal court and are regularly resolved by state courts.").

*Niagara* is also inapposite. There, the Second Circuit found that "the pace of the parallel litigation in New York state court has not adequately protected" the declaratory judgment plaintiff's rights and "has offered no prospect of a 'complete and prompt' resolution of the dispute." 673. F.3d at 103. Here, the opposite is true. In the California Action, PIMCO specifically requested that the timeliness issue be resolved "on an early and expedited basis" as an issue "that, if decided by the court, would simply or further resolution of the case." PIMCO R.56.1, ¶7.

In sum, AIG's improper use of the Declaratory Judgment Act should be rejected.

## B. PIMCO's Claims Are Timely

PIMCO's claims were first brought in the Consolidated Class Action Complaint filed on October May 18, 2009, well within all applicable limitations and repose periods.[7] The class was certified on October 7, 2014, in connection with the Class Action Settlement. Upon certification of the Class, PIMCO became a party to the Class Action. PIMCO's claims are a continuation of the original lawsuit, and were first "brought" as of the filing of the underlying class action lawsuits of which they were a part. 15 U.S.C. § 77m. Thus, they are timely.

---

[7] In fact, certain of PIMCO's claims were filed even earlier. *See, e.g.*, *Carroll v. AIG Int'l Grp., Inc. et al.*, No. 1:08-cv-8659 (S.D.N.Y. filed Oct. 10, 2008); *Fire and Police Pension Ass'n of Colo. and M. Clay Ragsdale, IV v. AIG Int'l Grp., Inc. et al.*, No. 1:08-cv-10586 (S.D.N.Y.) (filed Dec. 4, 2008).

A class action under Rule 23 is "a truly representative suit" in which one or more class members bring a group of common claims for aggregated resolution. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550 (1974). Rule 23 allows the representative to litigate the class's claims in the aggregate, and each individual claim is pending in the court upon the inception of the class suit. *Id.* at 550-51 ("Whatever the merit in the conclusion that one seeking to join a class after the running of the statutory period asserts a 'separate cause of action' which must individually meet the timeliness requirements, such a concept is simply inconsistent with Rule 23 . . . ."). A class member does not need to "opt in" to have its individual damages claims included in the certified class action. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (rejecting argument that the Due Process Clause "requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out'").

The Constitution and Rule 23 safeguard the interests of individual class members in multiple ways, including by allowing class members to take control of their own claims by litigating them individually. *See Shutts*, 472 U.S. at 811-12 (the Constitution requires "minimal procedural due process protection" such that absent class members "receive notice plus an opportunity to be heard and participate in the litigation" and the "opportunity to remove [themselves] from the class"). When a member of a certified class takes control of its claims and pursues them individually, the resulting individual action is a continuation of the original, underlying class suit. *Joseph v. Wiles*, 223 F.3d 1155, 1167-68 (10th Cir. 2000); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (Posner, J.); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206, 209 & n.5 (3d Cir. 2009) (same).

The issue of whether, for purposes of considering the timeliness of claims, a class member's claims are deemed commenced upon the filing of a class action was briefed and decided

in *American Pipe*. In that landmark case, the Supreme Court explained that "the claimed members of the class stood as *parties to the suit* until and unless they received notice thereof and chose not to continue." 414 U.S. at 551. The Court also made clear that, once a class action is certified under Rule 23, class members become actual parties to the action with their individual claims asserted in the litigation, and are bound by any judgment if they do not request to be excluded from the class. *Id.* at 554, 549 (holding that "[t]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class *who would have been parties had the suit been permitted to continue as a class action*.").

The Supreme Court has explained that, under *American Pipe*, unnamed class members "should be treated *as though they had been named plaintiffs* during the pendency of the class action." *See Chardon v. Soto*, 462 U.S. 650, 659 (1983). The Second Circuit has similarly explained that "[t]he theoretical basis on which *American Pipe* rests is the notion that class members are treated *as parties to the class action* 'until and unless they received notice thereof and chose not to continue.'" *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (quoting *Am. Pipe*, 414 U.S. at 551). Because members of the asserted class are treated "*as having instituted their own actions*, at least so long as they continue to be members of the class, the limitations period does not run against them during that time." *Id*.

As the Tenth Circuit and numerous district courts around the country have recognized, application of *American Pipe* to cases such as this one, properly understood, does not require application of "tolling" principles at all. Instead, "[t]he class action mechanism's inherent representativeness means that each putative class member 'has effectively been a party to an action" against the defendant 'since a class action covering him' was filed." *See State Farm Mut. Ins. Co. v. Boellstorff,* 540 F.3d 1223, 1232-33 (10th Cir. 2008) (holding the "application of the

*American Pipe* tolling doctrine to cases such as this one does not involve 'tolling' at all") ("the filing of a class action … causes the courts to treat 'members of the asserted class' as if they 'hav[e] instituted their own actions'") (quoting *WorldCom*, 496 F.3d at 255); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir.1985) (under *American Pipe* an unnamed class member is "deemed to be actively prosecuting her rights" until opting out); *In re BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *4-5 (S.D. Tex. Sept. 30, 2014) (same); *In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.*, 2012 WL 6840532, at *2-5 (D.N.J. Dec. 20, 2012) (same); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1163 (C.D. Cal. 2010) (same).[8]

Of particular relevance here, once the class is certified, all members of the certified class become parties to the class action with their individual claims interposed in the case. *See Crown, Cork & Seal*, 462 U.S. at 354 (explaining that the opt out plaintiff there "clearly would have been a party in [the class action] if that suit had been permitted to continue as a class action"). Repeatedly, the Supreme Court has recognized that unnamed class members become "parties" to the Class Action after the case is certified under Rule 23. *Smith*, 131 S. Ct. at 2379 (commenting on the "novel and surely erroneous argument that a nonnamed class member is a party to the class action litigation *before the class is certified*" for purposes of preclusion) (emphasis in original); *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002) (holding that after certification is granted, an unnamed member of a certified class is a considered a "party" with a right to appeal an adverse judgment).

---

[8] While *American Pipe* characterized its rule as "tolling" the statute of limitations for unnamed class members, *American Pipe* "tolling" does not operate in the same manner as traditional forms of tolling. True tolling occurs when a plaintiff is excused from having to initiate a lawsuit to enforce its rights within a statutory timeframe because of some condition or factor that the law recognizes as sufficient to excuse compliance with the deadline. *See, e.g.*, *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilberston*, 501 U.S. 350, 363 (1991) (considering the fraudulent concealment rule).

Circuit courts of appeal have affirmed this rule in numerous cases. *See, e.g., Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 608-10 (7th Cir.1980), *cert. denied*, 451 U.S. 976 (1981); *Edwards v. Boeing Vertol Co.*, 717 F.2d 761, 765 (3rd Cir. 1983), *vacated on other grounds*, 468 U.S. 1201 (1984).

Here, PIMCO opted out of a certified class. Then, PIMCO simply moved its already-asserted causes of action from the class action to its individual action in California. The Class Action here "in essence pre-filed [PIMCO's] suit" and PIMCO "simply retook the reins" when it filed its independent suit. *See State Farm,* 540 F.3d at 1232-33; *BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *5 (holding that the filing of a class action satisfies the statute of repose for all unnamed class members' claims because it constitutes a "prefiling" of such claims). Under such circumstances, "the concern identified by the Second Circuit in *IndyMac*—that applying *American Pipe* tolling somehow abridges a defendant's substantive right to be free from suit after a specific period of time—is illusory." *BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *5.[9]

Thus, PIMCO has "been a party to [the] action against th[e] defendants" since the time the Lead Plaintiff filed the Class Action Complaint. Since the Complaint was clearly filed "within [the repose] period on behalf of a class of which [PIMCO] was a member," and the Class was

---

[9] Moreover, a timely filed class complaint "'notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.'" *Crown, Cork & Seal*, 462 U.S. at 353 (quoting *Am. Pipe*, 414 U.S. at 555). Thus, a defendant sued by a class under the Securities Act receives notice of the claims on which he is being sued as well as the generic identities of all the plaintiffs, the potential size of the class and the extent of his likely total aggregate exposure to all class members (of which his exposure to individual class members will be a subset). Section 13 entitles the defendant to nothing more. *See Am. Pipe*, 414 U.S. at 556-58 (rejecting argument that tolling the intervenors' claims deprived defendants of substantive rights under the antitrust laws).

certified under Rule 23, an analysis of whether the repose period was tolled is unnecessary: PIMCO's claims are timely.

Tellingly, AIG has recognized that unnamed class members become parties to a class action lawsuit upon class certification. For example, less than two months ago, in support of its motion to dismiss an opt out lawsuit filed before Judge Swain certified the Class, AIG argued: "absent class members are not parties to a class action *prior to certification*." *See Gen. Elec. Pension Trust, et al. v. Am. Int'l Grp., Inc.*, No. 1:15-cv-00957-LTS-DCF, ECF No. 28, at 2, 4 (S.D.N.Y. May 28, 2015). Citing the Supreme Court's "particularly clear" holding in *Smith*, 131 S. Ct. at 2379, that unnamed members of a prospective class could not be bound by a decision "*prior to the certification of a class because they were not "parties" to that action*," AIG conceded that tolling is unnecessary where, as here, an investor opts out after a class is certified. *Id.* (noting *Smith*'s description as "novel and surely erroneous" the idea that a putative class member could be a "party to [a] class-action' lawsuit *before certification*"). In the *GE Pension Trust* opt out case and a plethora of other opt out cases,[10] AIG emphasized that the individual plaintiffs would have become "parties within the meaning of Fed. R. Civ. P. 23" had they remained in the Class Action suit when the Class was certified, as PIMCO did. *Id.* at p. 4, n.4 (citing *Edwards*, 717 F.2d 761). PIMCO R.56.1 ¶¶1-5.

---

[10] *See Lord Abbett Affiliated Fund, Inc., et al. v. AIG, Inc., et al.* No. 15-cv-774-LTS-DCF (S.D.N.Y.) [ECF No. 28]; *British Coal Staff Superannuation Scheme, et al. v. AIG, Inc., et al.*, No. 12-cv-4555-LTS-DCF (S.D.N.Y.) [ECF No. 52]; *The Regents of the Univ. of Cal. v. AIG, Inc., et al.*, No. 14-cv-1270-LTS-DCF (S.D.N.Y.) [ECF No. 45]; *Pacific Life Funds, et al. v. AIG, Inc., et al.*, No. 12-cv-6071-LTS-DCF (S.D.N.Y.) [ECF No. 47]; *GIC Private Ltd. v. AIG, Inc., et al.*, No. 13-cv-6565-LTS-DCF (S.D.N.Y.) [ECF No. 25]; *Teachers Ret. Sys.of the State of Ill. v. AIG, Inc., et al.*, No. 13-cv-3377-LTS-DCF (S.D.N.Y.) [ECF No. 47]; *Kuwait Inv. Office v. AIG, Inc., et al.*, No. 11-cv-8403-LTS-DCF (S.D.N.Y.) [ECF No. 44]; *Oppenheimer Equity Fund, Inc., et al. v. AIG, Inc., et al.*, No. 12-cv-523-LTS-DCF (S.D.N.Y.) [ECF No. 48].

In sum, the Class was certified and PIMCO was a party to the litigation until it opted out of the certified Class and filed its own individual action in California. In these circumstances, PIMCO's individual claims are timely without the need for tolling.

### C. *IndyMac* Does Not Control The Resolution Of This Action

As explained above, the Second Circuit in *IndyMac* did not address the question presented in this action: the timeliness of opt out claims by a plaintiff that was a member of a certified class action in which the named plaintiffs had standing to pursue the claims. In *IndyMac*, appellants' claims had not been validly asserted in the corresponding class action due to a standing deficiency, and therefore their claims were only timely if they were "tolled." *See Walters v. Edgar*, 163 F.3d 430, 432-33 (7th Cir. 1998) ("[I]f the named plaintiffs [in a class action] lacked standing when they filed the suit, there were no other party plaintiffs to step into the breach created by the named plaintiffs' lack of standing . . . ."); *accord Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006) (noting in the context of analyzing a class representative's standing, "under Article III of the Constitution, federal courts may only decide only cases and controversies, and a plaintiff without standing presents no live case or controversy."). Moreover, there was not a certified class in *IndyMac*.[11]

As discussed above, lead plaintiff in the Class Action filed an amended complaint on May 18, 2009, alleging, *inter alia*, claims under Section 11 of the Securities Act based on purchases of

---

[11] Citing the Class Notice, AIG contends that Judge Swain "has already acknowledged that *IndyMac* could operate to bar claims brought by opt-out plaintiffs." *See* AIG Mem. at 11, n.6. The Class Notice, however, was prepared by Lead Counsel. ECF No. 445. Moreover, the Class Notice simply acknowledged the risk presented by *IndyMac* and recommended that Class members "consult your counsel, at your own expense, to fully evaluate your rights." ECF No. 461-1, at 24. Similarly, the fact that the undersigned counsel, in representing other Class members, requested an opt-out deadline after the Supreme Court's determination of the *IndyMac* appeal is irrelevant and immaterial to the resolution of this case. *See* AIG Mem. at 4-5.

AIG securities with CUSIPs 026874115, 02687QBC1, 02687QDGO, 02687QBD9, 026874BG1, and 026874BE6, in six offerings between October 18, 2006 and May 12, 2008, the same securities PIMCO purchased and is suing on in the California Action. PIMCO R.56.1 ¶¶1-5. The Class Action was certified in October 2014, and the certified Class included all persons and entities who had purchased the enumerated securities.

Thus, PIMCO's opt out claims are fundamentally different than those brought by the *IndyMac* appellants. Accordingly, the Second Circuit's primary concern in *IndyMac* that applying tolling would "abridge, enlarge or modify any substantive right" under the Rules Enabling Act does not exist. *See BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *5 (explaining that "the concern identified by the Second Circuit in *IndyMac*—that applying *American Pipe* tolling somehow abridges a defendant's substantive right to be free from suit after a specific period of time—is illusory . . . . when a class member assumes responsibility for its own individual claim during the course of the class action"). In short, unlike the intervenors in *IndyMac*, PIMCO was (1) a party to a certified class action, (2) brought by a named plaintiff with standing, (3) within the limitations and repose periods.[12] Accordingly, PIMCO's claims were timely commenced when the certified

---

[12] A finding that the California Action is timely is also consistent with (1) the Supreme Court's established test for determining if a federal rule violates the Rules Enabling Act, *i.e.*, whether it "really regulates procedure - the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach v. Wilson & Co.,* 312 U.S. 1, 15 (1941); *see Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.,* 559 U.S. 393, 407 (2010) ("The test is not whether the rule affects a litigant's substantive rights; most procedural rules do."); and (2) the Supreme Court's alternative test of whether suspending the limitations period "in a given context is consonant with the legislative scheme." *Am. Pipe*, 414 U.S. at 557-58. Under the first test, application of *American Pipe* does not alter Section 13's three year period, but rather effects its enforcement by determining when a suit is "brought." Under the second test, application of *American Pipe* to Section 13's three year period is consistent with the Securities Act's overall legislative scheme by ensuring strong remedies for misrepresentations in connection with an offering of registered securities but requiring that such claims be brought promptly.

Class Action was filed and PIMCO was a party to the action at the time it exercised its constitutional right to opt out and pursue its own individual action in California.[13]

Even though PIMCO's individual claims are timely under Second Circuit law, *e.g.*, *WorldCom*, 496 F.3d at 255, PIMCO's claims in the California Action are governed under the law binding on the California court. *See Hoelzer v. City of Stamford, Conn.*, 722 F. Supp. 1106, 1112 (S.D.N.Y. 1989), *aff'd*, 933 F.2d 1131 (2d Cir. 1991) (court in a declaratory relief action seeking to determine the timeliness of the coercive action must apply the law governing the coercive action). In determining the timeliness of PIMCO's claims, the California Court is bound only by the decisions of the United States Supreme Court. *People v. Bradley*, 1 Cal. 3d 80, 86 (1969). Decisions of lower district and circuit courts interpreting federal law, though persuasive, are not binding on state courts. *Gilmore Bank v. AsiaTrust New Zealand Ltd.*, 223 Cal. App. 4th 1558, 1569 (2014).

Every federal district within California has held that *American Pipe* applies to the statute of repose for opt out claims, including the statute of repose governing Securities Act claims. *See, e.g.*, *Me. State Ret. Sys.*, 722 F. Supp. 2d at 1166; *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, 2012 WL 1798997, at *2 (C.D. Cal. Feb. 17, 2012); *Hrdina v. World Sav. Bank, FSB*, 2012 WL 294447, at *3-4 (N.D. Cal. Jan. 31, 2012); *Hildes v. Andersen*, 2010 WL 4811975, at *3-4 (S.D. Cal. Nov. 8, 2010). Moreover, as the Ninth Circuit recently concluded, the "majority of federal courts" nationwide that have addressed the issue have held that *American Pipe* tolling applies to

_____

[13] AIG's other authorities are similarly inapposite. Like *IndyMac*, none of those cases involved opt outs from a certified class action. *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014); *Lampf*, 501 U.S. 350; *FDIC v. Bear Stearns Asset Backed Sec. I LLC*, 2015 WL 1311300 (S.D.N.Y. Mar. 24, 2015); *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 23 F. Supp. 3d 203 (S.D.N.Y. 2014); *Caldwell v. Berlind*, 543 F. App'x 37 (2d Cir. 2013).

statutes of repose or renders it "superfluous." *See, e.g.*, *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 535 (9th Cir. 2011); *see also*, *State Farm*, 540 F.3d at 1232-33; *Arivella v. Lucent Technologies, Inc.*, 623 F. Supp. 2d 164, 177 (D. Mass. 2009); *Ballard v. Tyco Int'l, Ltd.,* 2005 WL 1683598 at *7 n.8 (D.N.H. July 11, 2005); *In re Enron Corp. Sec.*, 465 F. Supp. 2d 687, 717 (S.D. Tex. 2006). Notably, every federal court outside the Second Circuit that has considered *IndyMac*'s application of *American Pipe* has rejected it. *See BP p.l.c. Sec. Litig.*, 2014 WL 4923749, at *5; *Prudential Ins. Co. of Am. v. Bank of Am. Nat'l Ass'n*, 14 F. Supp. 3d 591, 618 (D.NJ 2014).

###   D.   A Determination That PIMCO's Claims Are Untimely Would Undermine The Purpose Of Class Actions

A determination that PIMCO's claims in the California Action are untimely would set a precedent encouraging class members to opt out prior to the repose period where they would otherwise not do so, a result that works at cross purposes with the efficiency goals of Rule 23. *See* Fed. R. Civ. P. 23(b) (providing for class actions where "superior to other available methods for fairly and efficiently adjudicating [a] controversy"). Rule 23 was designed to provide for efficiency and economy of litigation and thus permits – and even encourages – class members to forgo taking any action to pursue or preserve their individual claims until the class has been certified and notice of the class action has been provided. *See Menominee Indian Tribe of Wis. vs. U.S.*, 614 F.3d 519, 527 (D.C. Cir. 2010) (citing *Am. Pipe*, 414 U.S. at 551); *Crown, Cork & Seal*, 462 U.S. at 353-54.

Under AIG's proposed rule, absent class members could never rely upon a certified class to protect their individual claims and would have to file protective lawsuits to preserve their ability to pursue adequate recompense through individual litigation. This unnecessary protective action would result in enormous inefficiencies and costs to investors, issuers, and the courts. The result

would be "[a] needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 . . . [was] designed to avoid." *Crown, Cork & Seal*, 462 U.S. at 351.

AIG complains that PIMCO "sat on the sidelines" and "did nothing to preserve its rights." AIG Mem. at 2, 7, 14. However, PIMCO did not sleep on its rights. Under Rule 23 and decades of governing Supreme Court precedent, the class action device allows unnamed class members to rely on the filing of the class action with the assurance that their rights are being adequately protected, rather than inundate the courts with a multitude of protective filings. *See Shutts*, 472 U.S. at 810 ("Unlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection."); *Elmore*, 227 F.3d at 1012 (Posner, J.) ("We want the class members to rely on the filing of the class action rather than to clutter the courts with a multitude of separate suits."). The Second Circuit has instructed that "[t]he *American Pipe* tolling doctrine was *created* to protect class members from being forced to file individual suits in order to preserve their claims." *WorldCom*, 496 F.3d at 256.

Here, PIMCO allowed the class action litigation to run its course, then evaluated the proposed settlement and elected to exercise its Constitutional right to opt-out to pursue an individual action. *Id.* This is precisely how the class action device was designed to operate. *See Crown, Cork & Seal*, 462 U.S. at 353 (extending *American Pipe* to opt outs avoids "an increase in protective filings [by opt outs] in all class actions" and "although a defendant may prefer not to defend against multiple actions in multiple forums . . ., this is not an interest that statutes of limitations are designed to protect.").

Indeed, as AIG concedes, PIMCO's measured approach places it in an entirely different position than the other opt out plaintiffs who "filed their individual actions before a certification

of any class and before a class settlement was reached" and thus should not be able to rely on *American Pipe*.[14]  In those other actions, AIG strenuously argues that the opt out plaintiffs cannot "now complain that they relied on the Class Action, or that they were unsatisfied with the proposed settlement in the Class Action, when they filed their individual actions" because they "made a calculated decision not to participate in the Class Action, [and] cannot escape the statutory repose periods that bar certain of their claims."[15]  Not so with PIMCO.

Moreover, Rule 23(b)(3) expressly provides opt out rights in class actions seeking money damages – a Due Process guarantee the Supreme Court recently affirmed.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011) (emphasizing "the need for plaintiffs with individual monetary claims to decide for themselves whether to tie their fates to the class representatives' or go it alone").

## IV.     CONCLUSION

For the reasons described above, PIMCO's Motion to Dismiss should be granted.  If the Court considers AIG's motion for summary judgment, it should be denied.

Dated: July 31, 2015                                Respectfully submitted,

                                                    BERNSTEIN LITOWITZ BERGER
                                                      & GROSSMANN LLP

                                                    _____
                                                    TIMOTHY A. DELANGE

                                                    BLAIR A. NICHOLAS (*pro hac vice*)
                                                    TIMOTHY A. DELANGE (*pro hac vice*)

---

[14] *See* DeLange Decl., Ex. F (*British Coal*, No. 12-cv-4555-LTS-DCF, ECF No. 52 at 4; *The Regents of the Univ. of Cal.* No. 14-cv-1270-LTS-DCF, ECF No. 45 at 4; *Pacific Life*, No. 12-cv-6071-LTS-DCF, ECF No. 47 at 4; *GIC*, No. 13-cv-6565-LTS-DCF, ECF No. 25 at 4; *Teachers Ret. Sys. of the State of Ill.*, No. 13-cv-3377-LTS-DCF, ECF No. 47 at 4; *Kuwait*, No. 11-cv-8403-LTS-DCF, ECF No. 33 at 4, and *Oppenheimer*, No. 12-cv-523-LTS-DCF, ECF No. 48 at 4).

[15] *Id.*

DAVID R. KAPLAN (*pro hac vice*)
LUCAS E. GILMORE (*pro hac vice*))
BRANDON MARSH (*pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323

- and-

JEROEN VAN KWAWEGEN (JV-1010)
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Counsel for Pacific Investment Management Company LLC and the PIMCO Funds*